## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,
                Plaintiff,

v.                                       **No.** CR 09-863 MCA

**MARK E. HOPKINS, and**
**SHARON J. HOPKINS,**
                    Defendants.

## ORDER

**THIS MATTER** is before the Court on Defendants' joint *Motion To Dismiss Indictment Or, In The Alternative, For Immediate Release Of Funds Belonging To Defendants* [Doc 195], filed on July 29, 2010 and *Supplemental Amending Motion To Dismiss Indictment, Or, In The Alternative, For Immediate Release Of Funds Belonging To Defendants* [Doc 206], filed on August 13, 2010.  Having reviewed the submissions and arguments of the parties, and being otherwise informed in the premises, the Court denies the *Motions*.

## I.      BACKGROUND

In April 2009, Defendants, Mark and Sharon Hopkins, were indicted on criminal tax evasion charges.  [Doc 2]  Defendants were permitted to remain out of custody, on conditions of release.  [Doc 15] In August 2009, the Government filed a motion for an order to show cause why Mark Hopkins's conditions of release should not be revoked based on his violation of federal law, which required him to make estimated quarterly tax

payments.  At the hearing on the issue, in October 2009, Mark Hopkins agreed to make estimated quarterly tax payments into the Court registry, instead of directly to the Internal Revenue Service (IRS).  From October 2009 through May 2010, the Hopkins made the agreed escrow deposits into the Court registry.

In June 2010, Defendants filed a *Motion* to modify the conditions of release.  [Doc 131]  This Court granted the *Motion*, to the extent that Defendants were no longer obligated to make escrow deposits into the Court registry and that the funds currently in the registry, approximately $130,000,  were ordered released to Mark Hopkins.  [Doc 145]  The *Order*, however, indicated that Mark Hopkins had an ongoing obligation to make estimated quarterly tax payments and that this  obligation was tied to his conditions of continued release.  [Id.]  Before the escrosed funds could be processed and released to Mark Hopkins, the IRS served a notice of federal tax lien on the Clerk of the Court for the District of New Mexico.  The Clerk of the Court filed an Interpleader action, seeking a judicial determination of entitlement to the escrowed funds.  See United States District Court for the District of New Mexico v. Hopkins, No. CV 09-644 (D.N.M.).  At this time, the escrowed money has not been distributed.

Until April 2010, Defendants were jointly represented by Mr. Becraft, who appears *pro hac vice*, and Mr. Hanisee, who acts as local counsel.  In April, Sharon Hopkins fired Mr. Becraft and hired her own counsel, Mr. Altman.  [Doc 93]  Mr. Altman also appeared *pro hac vice*, with Mr. Hanisee as co-counsel.  On July 15, 2010, Mr. Altman filed a motion to withdraw as counsel.  [Doc 185]  Mr. Altman stated that Defendants had not

paid his fee and that he could no longer afford to continue representation without

payment.  The Court granted the motion and directed Mrs. Hopkins to either retain

alternate representation or apply for appointment of an attorney by July 30, 2010.  [Doc

188]  Mrs. Hopkins initially indicated that she would proceed *pro se* [Doc 194], but has

since withdrawn that motion [Doc 203] and requested the appointment of counsel [Doc

202].

On July 29, 2010, Defendants filed a joint *Motion To Dismiss Indictment Or, In

The Alternative, For Immediate Release Of Funds Belonging To Defendants* [Doc 195].

The Government filed an expedited response on August 4, 2010 [Doc 200], and the issue

is now ripe for decision.

## II.    ANALYSIS

Defendants raise two points in their *Motion*.  First, Defendants argue that the

Government's encumbrance of their assets has resulted in a financial inability to retain

their counsel of choice, thereby violating the Sixth Amendment.  Based on this

constitutional violation, Defendants contend that the Indictment must be dismissed.

Second, and in the alternative, Defendants proffer that the constitutional violation could

be remedied if the Court were to enjoin further IRS collection actions and provide

immediate access to the escrowed funds in the Court registry.  Each argument is

addressed in turn.

## A.    Choice of Counsel

Defendants aver that in issuing the levies, the IRS has violated their Sixth

Amendment right to their choice of counsel.  Specifically, Defendants state that their

current financial straights have been caused by the IRS encumbering their assets with tax

liens and as a result, they have been unable to retain Mr. Altman.  Further, Defendants

maintain that on his departure, Mr. Altman has took documents pertaining to the criminal

case.  Thus, Defendants take the position that the IRS has "destroyed the attorney/client

relationship between Mrs. Hopkins and Mr. Altman" and has further placed "essential

documentation beyond [Defendants'] reach."  [Doc 196 at 4]  The Government responds

that Defendants have "ample funds to pay an attorney," and it requests discovery in order

to ascertain the true state of the Hopkins's finances.  [Doc 200 at 9]

       In considering the Sixth Amendment right, however, the inquiry need not be

whether Defendants truly cannot afford to retain their counsel of choice.  See  United

States v. Nichols, 841 F.2d 1485, 1497 (10th Cir. 1988) (rejecting a similar

characterization by the government).  Instead, the question before the Court is whether

the Government has unconstitutionally restrained their assets.  Our Circuit addressed a

similar issue in Nichols.  In that case, 26 defendants were indicted on drug-trafficking

charges.  Id. at 1289.  A forfeiture provision was included in the indictment, and several

defendants moved the court to exempt from forfeiture any assets that were needed to pay

attorney fees.  Id.  The court deferred ruling until after trial, at which time it concluded

that "the criminal forfeiture provisions violated a defendant's sixth amendment right to

choice of counsel."  Id.  The government appealed.  Id. at 1490.

       On appeal, the government argued "that a defendant should not be allowed to raise

the choice of counsel claim unless the defendant can show that the government's action caused the defendant to be denied the services of a desired attorney of his or her choice." Id. at 1497.  The Nichols Court disagreed and instead considered whether the government may "constitutionally restrict [a defendant's] financial ability to hire an attorney" or at the least, whether the government unconstitutionally restrained assets in that case.  Id. at 1498.  The Court began the inquiry with the premise that "[t]he government may act in a manner that adversely affects a criminal defendant before trial when it is necessary to protect an important public interest."  Id. at 1500.  In the past, such public interests have included community safety, crime prevention, securing the defendant's presence in court, preventing the continued illicit use of property, enforcing criminal sanctions, and ensuring the availability of property to which the government may have a post-trial claim. Id. at 1501.

Thus, "as long as its action is not arbitrary, a court may restrict a defendant's choice of counsel if allowing representation by a particular attorney would adversely affect an important public interest."  Id. at 1504.  On the facts of the Nichols case, the Court concluded that "the government does not deny a defendant's right to choice of counsel when it acts pursuant to a statutory procedure to protect its interest in assets in the defendant's possession."  Id. at 1505.  Stated another way, "[a] defendant's ability to select an attorney to prepare a defense in a criminal prosecution may be limited when the government has demonstrated that it has an interest in the assets that the defendant seeks to use."  Id.  This is because "the right to choice of counsel does not vest a defendant with

an absolute right to use any assets in his or her possession to retain an attorney."  Id.

 The Nichols case comports with a more recent United States Supreme Court case addressing the choice-of-counsel issue.  In United States v. Gonzalez-Lopez, 548 U.S. 126 (2006) (Gonzalez-Lopez), the district court repeatedly denied the *pro hac vice* admission of the defendant's counsel of choice, based on violations of local rules.  Id. at 142-43.  There was no dispute in that the district court had, by its ruling, *erroneously* deprived the defendant of his choice of counsel.  Id. at 144.  The Court observed at the outset that "'the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.'"  Id. (*quoting* Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-25 (1989).).  The ultimate holding of Gonzalez-Lopez is that a deprivation of the right to counsel of choice is complete "when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received."  Gonzalez-Lopez, 548 U.S. at 148.

 In the current context, Nichols and Gonzalez-Lopez require that to implicate the right to choice of counsel, the Government or the Court must have erroneously or arbitrarily limited Defendants' ability to retain their counsel of choice.  See also United States v. Mendoza-Salgado, 964 F.2d 993, 1016 (10th Cir. 1992) ("Only when the trial court unreasonably or arbitrarily interferes with a defendant's right to counsel of choice do we agree a conviction cannot stand, irrespective of whether the defendant has been

prejudiced." (internal quotation marks and citation omitted)).  Defendants do not contend that the tax levies are unsubstantiated or not supported by law.  In other words, Defendants do not take the position that the IRS has not acted to "statutory procedure to protect its interest in assets in the defendant's possession."  Nichols, 841 F.2d at 1505. Indeed, pursuant to 26 U.S.C. § 6321 and 26 U.S.C. § 6331, the IRS has the authority to impose a lien when a taxpayer refuses or fails to pay a tax after a demand, and further, the IRS may levy all of the taxpayer's property to which a lien is attached.  There is no contention in the present case that the IRS has acted contrary to its statutory authority.

Defendants instead argue that the levying of the funds that were released by the Court was "to obstruct and prevent the orders of this Court from being effectuated and obeyed, [and] also to interfere with [D]efendants' ability to defend themselves."  [Doc 195 at 3]  Essentially, Defendants argue that the Government is attempting to "effectively determine who will represent [them]" by manipulating—however legally—their access to funds.  Nichols, 841 F.2d at 1508.  Our Circuit has made clear that "this or any other type of prosecutorial misconduct" will not be tolerated.  Id.  It is insufficient, however, for Defendants to make vague allegations of Government misconduct.  Turning to Defendants' argument, they charge first that the Government as criminal prosecutor in this case is acting in concert with the Government as civil tax collector—and acting contrary to internal IRS procedures.  [Doc 195 at 3-4]  For support, Defendants cite IRM 5.1.5.11.4, which states that

In cases under DOJ jurisdiction, active cases will also be coordinated with DOJ through [Criminal Investigation (CI)]. A transmittal memorandum from the Director, Collection Area Operations will be addressed to CI and will include . . . [a] conclusion as to whether even the passive-type collection activity would tie up the taxpayer's assets to the extent that the taxpayer would be unable to finance a defense of the potential criminal prosecution.

[Doc 195-2 at 1-2; Doc 196 at 15-16] In addition, Defendants point to IRM 5.11.1.3.3, which directs that "property subject to attachment or execution under any judicial process is not subject to levy" and further that "the IRS generally does not levy on assets in the custody or control of a court because that would interfere with the court proceeding." [Doc 195-3 at 1] Defendants appear to argue that based on these internal IRS policies, the Government's levies were imposed in bad faith, with knowledge of the likely negative impact on Defendants' ability to retain counsel.

Whether the Government adhered to internal IRS policies is not relevant to whether the Government acted constitutionally when it restrained Defendants' assets. See United States v. Scott, 37 F.3d 1564, 1582 (10th Cir. 1994) (holding that even if an agent violated IRS internal procedures, "due process is not implicated under the circumstances of this case, because the regulation is not required by statute"). Further, the parties contest whether the Government complied with the cited policies. With regard to IRM 5.1.5.11.4, Defendants do not argue that the Government failed to determine whether collection would inhibit their defense, and the Government continues to maintain that Defendants have the assets to retain representation. Thus, the Government has arguably complied with the procedure, which requires an assessment of the impact of collection on

Defendants' ability to mount a defense.  Further, IRM 5.11.1.3.3 observes only that assets

in the custody or control of a court are generally not levied upon—but the assets in

contention were, in the view of the Government,  no longer in the custody or control of

the Court.  As per this Court's June 18, 2010 *Order*, the funds had been released to Dr.

Hopkins. This question implicates an entirely separate proceeding, which is currently

before a different judge.  See United States District Court for the District of New Mexico

v. Hopkins, No. CV 09-644 (D.N.M.).  Without resolving these factual disputes,  the

Court is satisfied that the Government has followed the IRS procedures to the extent that

any failures to comply are not evidence that the liens were issued in bad faith, for the

purpose of undermining Defendants' ability to retain an attorney in the current criminal

proceeding.

Defendants also point out that they have repeatedly stated in their pleadings that

unless the Court released the escrowed money that is held in the registry, they would not

be able to afford representation.  [Doc 196 at 15]  Based on these filings, as well as the

Government's own investigation, Defendants appear to contend that the Government has

acted in bad faith because it was "fully aware" that "any interference with the Court's

order to return those funds to [D]efendants would prevent them from paying their

attorneys and defraying the costs . . . of trial."  [Id.]  The Court, however, does not

evaluate the Government's knowledge of Defendants' financial situation—instead, the

Court considers whether the imposition of the various liens was arbitrary or erroneous.

Defendants make no argument that the liens are erroneous and the Government has

provided a reasonable explanation for the timing of and reasons for the liens.

According to the Government, Defendants owe a substantial amount of money in unpaid income taxes.  The IRS assessed the deficiency for tax years 1996, 1997, 1999, 2000, and 2001, and in 2004, filed a federal tax lien against Defendants.  When Defendants were indicted in 2009, the grand jury found probable cause for $686,009 in tax liability for 1996, 1997, 1999, 2000, and 2001.  It is the Government's position that in order to avoid liability, "Defendants have titled few assets in their name" and have "made very limited use of bank accounts in their own name."  [Doc 200 at 2]  Thus, when the Court entered its June 18, 2010 *Order*, which identified the assets as belonging to Dr. Hopkins, the IRS determined that it had "locat[ed] an asset in Mark Hopkins's name" and moved accordingly to levy that asset.  [Id. at 3]  With regard to the other liens, apart from the lien that was served on the Clerk of the Court, the Government states that the assessments expire after ten years, so the IRS began the process of referring those assessments to the Department of Justice in order to instigate a civil lawsuit to reduce the assessments to a judgment.  That civil suit will include an action for judicial foreclosure on the Hopkins's personal property and to accomplish this, the IRS must file nominee liens on property that is titled in the names of third parties.

The facts of the present case do not compare with the facts of United States v. Stein, 5541 F.3d 130 (2nd Cir. 2008), upon which Defendants rely heavily.  In Stein, 13 former employees of an accounting firm were indicted.  Id. at 135.  The district court found (1) that the accounting firm's past practice had been to pay employee attorney fees;

(2) that government attorneys intimated that the government would consider the firm's decision to pay attorney fees in this case when deciding whether to indict the firm; (3) that but for the government's conduct, the accounting firm would have paid the employee's legal fees. Id. at 140-41. As a result, the district court dismissed the indictment. Id. at 142. The Second Circuit Court of Appeals agreed with the district court, holding that "the Sixth Amendment protects against unjustified governmental interference with the right to defend oneself using whatever assets one has or might reasonably obtain." Id. at 156. As a part of its analysis, the Court distinguished Stein from the forfeiture line of cases:

> The holding of Caplin & Drysdale is narrow: the Sixth Amendment does not prevent the government from reclaiming its property from a defendant even though the defendant had planned to fund his legal defense with it. It is easy to distinguish the case of an employee who reasonably expects to receive attorneys' fees as a benefit or perequisite of employment, whether or not the expectation arises from a legal entitlement.

Id. at 155.

In the present case, Defendants had no reasonable expectation that the monies that were in the Court registry would be available to them to pay attorney fees—particularly at the time that Sharon Hopkins engaged Mr. Altman. In October 2009, Mark Hopkins agreed to make deposits into the Court registry in order to put money aside for his 2010 estimated quarterly tax obligation and in order to avoid the revocation of his conditions of release that would result if he violated federal law by failing to pay those quarterly taxes. Mr. Altman entered an appearance for Sharon Hopkins in April 2010. The Court did not

order that the money be returned to Mark Hopkins until June 2010. At the time Mr.

Altman was hired, the money in the registry was not an available fund from which

Defendants could expect to pay fees. Even as of the June 18, 2010 *Order*, Defendants

were instructed that the payment of quarterly taxes remained a condition of release and

the only reason for the release of the funds was to eliminate the Court as intermediary

between Defendants and the IRS. As a result, the monies in the registry—like the

remainder of Defendants' assets—resemble assets subject to forfeiture more than they

resemble a company's legal defense fund.

      The Government acted with statutory authority and has articulated an important

public purpose for its actions that have adversely affected Defendants. See <u>Nichols</u>, 841

F.2d at 1500. As was recognized by the <u>Nichols</u> Court, "the government does not deny a

defendant's right to choice of counsel when it acts pursuant to a statutory procedure to

protect its interest in assets in the defendant's possession." <u>Id.</u> at 1505. Defendants do

not raise a legal challenge to the Government's interest in the assets, and Defendants do

not argue that the statutory—as opposed to the internal agency—procedure was not

followed. In response to Defendants' accusations of bad faith and suspicious timing, the

Government has provided a reasonable explanation for its actions. Accordingly, the

Court finds that in this case, the Government has demonstrated that it has an interest in

the assets that Defendants seek to use and therefore, the corresponding limitation of

Defendants' ability to select an attorney does not violate the Sixth Amendment. See <u>id.</u>

("A defendant's ability to select an attorney to prepare a defense in a criminal prosecution

may be limited when the government has demonstrated that it has an interest in the assets

that the defendant seeks to use."); see also Caplin & Drysdale, Chartered, 491 U.S. at

631-32 ("Criminal defendants, however, are not exempted from federal, state, and local

taxation simply because these financial levies may deprive them of resources  that could

be used to hire an attorney.").[1]

**B.**     **Alternate Remedy**

Defendants argue that an alternative remedy to dismissal of the Indictment would

be for them to "have access to the means for their defense" and injunction of further IRS

collections.  [Doc 196 at 18]  Because this Court finds that no constitutional violation

occurred, there is no need to consider an alternate remedy to dismissal of the Indictment.

**III.**     **CONCLUSION**

Defendants have failed to establish that the restriction of their assets has cast an

unconstitutional taint over this criminal proceeding.  As a result, Defendants have

established no basis for the dismissal of their Indictment.

**IT IS THEREFORE ORDERED** that Defendants' *Motion To Dismiss Indictment*

*Or, In The Alternative, For Immediate Release Of Funds Belonging to Defendants* [Doc

195] Defendants' *Supplemental Amending Motion To Dismiss Indictment, Or, In The*

*Alternative, For Immediate Release Of Funds Belonging To Defendants* [Doc 206] are

**DENIED**.

---

[1] As a result of this ruling, there is no need for the additional discovery requested by the
Government.

**SO ORDERED** this 20th day of August, 2010, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge